And good morning everyone. This is Judge Sykes and with me on the panel today are Judges Bower and St. Eve. I'd like to thank everyone for your patience as we continue to conduct arguments telephonically during the COVID pandemic and explain a few ground rules as we move forward today. I will keep the time since we are not in the courtroom and you can't see the time clock. I'm doing that on my iPhone so it will be a little imperfect as we move through the arguments today and I ask your indulgence with some flexibility for your opposing counsel. I will give everyone an approximate one-minute warning as you are approaching the end of your time for your opening argument and then the final arguments as well. So with that, let's call our first case. It is Sioux Line Railroad v. Consolidated Rail Corporation. Mr. Davis. Yes, good morning Your Honor. Andy Davis on behalf of the plaintiff appellant Sioux Line Railroad doing business as Canadian Pacific. You may proceed. Thank you. Good morning Your Honor. We are here today asking the court to reverse the district court's judgment and remand this case to the district court so that discovery can begin on CP's breach of fiduciary duty claim, CP or Canadian Pacific. The issue in this appeal is a purely legal one. It is whether the ICC Termination Act or ICTA can preempt CP's Indiana breach of fiduciary duty claim on a Rule 12 motion without any fact discovery. It cannot for three key reasons. First, CP's breach claim does not require the court to set or adjudicate a rental rate in a trackage rights agreement and therefore district court adjudication does not intrude on the Surface Transportation Board's exclusive jurisdiction under ICTA. Second, even if adjudication required some evaluation of the terms of the trackage rights agreement, fairness is not an element of breach of fiduciary duty under Indiana law and so the court need not evaluate the fairness of any of the terms of the trackage rights agreement in order to state a claim for breach of fiduciary duty. And third, the district court's Rule 12 dismissal put the STB denied CP's request for relief because it said that CP's claims belong in federal court. The federal court denied CP's request for relief because it said CP's claims belong at the STB. So the district court's dismissal deprived CP of any possible remedy to redress the shareholder misconduct that's at issue in this case. That is fundamentally unfair, it's contrary to the plain language of the ICTA, and it's a strong indication that the district court did err below. Mr. Davis, this is Judge Dykes, what remedies are you requesting? Yes, Your Honor, we are requesting a number of remedies including declaratory relief, that is a declaration by the district court that the appellee's conduct is in fact a breach of fiduciary duty, a request to void the trackage rights agreement, which is a remedy by the way that the STB looked at and said we, the STB, cannot pass judgment on that. That is a judicial issue. You have to go to district court and seek that remedy. We are also seeking punitive damages. We are seeking operating and maintenance expenses that are due under the terms of a long-standing 1906 agreement that governed the trackage rights prior to the termination of that agreement. Those O&M expenses, by the way, have nothing to do with a calculation of a rate at the STB. They are simply past due expenses. And finally, we're seeking injunctive relief. Injunctive relief that would require the implementation of an injunctive relief. So that injunctive relief would merely restore the status quo before the suspect's trackage rights agreement was implemented in this case. How are those equitable remedies, rescission and injunctive relief, setting damages aside for now, but how are those remedies consistent with the preemption clauses in the statutory scheme? This agreement has already received agency approval. That's correct, Your Honor. Well, actually, it's a fine point. The agency has exempted the transaction from approval. And so, in effect, what's the issue here? The agency rubber-stamped the trackage rights agreement under the applicable approval statute and the applicable regulations. And that's 49 CFR section 1180.2. In effect, what's at issue here? Because this is a trackage rights agreement between two consenting parties, and by the way, CP is not a party. CP is a minority shareholder, but it is not a party to the exemption. And so, the STB does not evaluate or review or assess the trackage rights agreement or its terms. It essentially issues a public notice, and then, as I said, rubber-stamps it 30 days later. And so, what the STB does, and what it did in this case, is it relies on the applicability of state law to police issues that may affect the underlying validity of the agreement that's brought before it. The STB is not equipped to make such a decision, and it made it very clear in this case, when it denied CP's request to stay the exemption proceeding, it made clear that, to the extent that was a remedy sought by CP, that is, a request to void the trackage rights agreement, that remedy belonged in federal court, not at the STB. And your Honor, there's an important point in that as well, which is that, if you look at Indiana fiduciary duty law, and this goes to your question about remedies, Indiana courts are vested with the full power of traditional equity courts to fashion flexible remedies in cases where there's a breach of fiduciary duty involving a minority shareholder. And that reflects the unique nature of minority shareholder rights in a closely-held corporation, and their ability to go out on an open market, and and sell their shares and get a fair market price for it. So, courts have full equity power to craft an appropriate remedy to redress the misconduct. Federal agencies do not have inherent equity powers. The STB does not have all of the equitable tools that are at the disposal of state or federal courts to fashion appropriate relief for the conduct or the misconduct that's at issue. And so, that's an example of the disconnect between the remedies that CP is seeking in federal court for the breach of fiduciary duty, and their similar relief at the STB. Mr. Davis, this is Judge St. Eve. I want to take one step back. With respect to the section 11-321A's preemption issue, the district court noted that you didn't present any argument to the contrary regarding consolidated rails preemption arguments on this section. Why haven't you waived your arguments with respect to that section? Yes, Your Honor. We acknowledge the district court did make that statement in its opinion. We respectfully submit, and as we pointed out in the brief, CP did oppose preemption both under 105-01B and section 11-321. And I would direct the court to docket 98 at pages 11 and page 15 of our opposition brief in which we did explicitly oppose the 11-321 argument. Now, did we spend a lot of pages on it? We did not. We were focused on... I think that's a distinction, Mr. Davis. I'm sorry to interrupt you. I think that's a distinction. You certainly opposed it briefly and cursorily, and that's what the district court's point was, that you didn't develop any arguments in response to their preemption arguments. So, in light of that, why haven't you waived those arguments with respect to that statutory provision? Well, what I would say in response to that, Your Honor, is I think we need to look at the procedural posture of this case. This comes up to you on a rule... on a dismissal of a Rule 12 motion. As I noted in the very beginning of my presentation, this is a pure question of law. The issues before this court involve statutory construction and whether the preemption statute at issue can reach the conduct that we've alleged in our amended complaint. This court has held on several occasions that where the issue before it turns on a pure issue of law, in particular an issue of statutory construction, that is not... the court often exercises its discretion to reach that issue, even if the court deems the argument waived. So, even if this court believed that argument had been waived, you have discretion, which you frequently use to address these types of statutory construction issues and issues that affect not just the parties before the court, but affect the interpretation of a victim, which will have implications for many other parties who are not at the table. I want to pivot to the fairness issue under Indiana law quickly. Even if CP's allegations do relate in some way to trackage rights agreements, the shareholders argue that this breach claim cannot be adjudicated without assessing the fairness of the rate, that is, the fairness of the rental rate under the trackage rights agreement. But fairness is not an element of breach of fiduciary duty under Indiana law. Under Indiana statute, the fairness of a transaction is considered only where the sole basis for a fiduciary duty claim is a conflict of interest, and we have alleged in its breach claim conduct that goes beyond the mere conflict of interest by the majority shareholders to include breaches of their duty of loyalty, their duty of good faith to the corporation and to the minority shareholders, and depriving CP of the right to meaningfully participate fully in the management of the corporation. Those allegations are separate and apart from a conflict of interest. I also mentioned that the district court's dismissal deprived CP of any remedy to redress the majority shareholder oppression. When the STB declined CP's motion for a stay, it made three observations. First, it noted that the district court was already considering the breach of fiduciary duty issue that CP had raised at the STB. It then observed that these types of contractual disputes are for the courts, not for the STB. And last, it explicitly said that the district court could void the trackage rights agreement, and if that happened, at that time, CP could come back to the STB and seek to revoke or reject the notice of exemption. Mr. Was the issue of the district court's authority to do so raised before the STB? It was not, Judge Stainys. The issue that the issue raised before the STB was effectively an injunctive relief standard, a request for a stay, and so the court walked through the four factors, or sorry, the STB walked through the four factors that are typically evaluated in connection with seeking injunctive relief and found that there was that there was not irreparable harm, and so it decided not to stay that petition. But the issue of the court's ability to to evaluate the the trackage rights agreement was not an issue. In fact, the appellees stated to the STB that their their view also was that to the extent there are underlying issues with the agreement, those issues need to be addressed at the district court, not at the STB. Now the appellees argue that Congress can eliminate remedies when it wants to, and that's true, but it did not do that in ICTA. ICTA preempts only remedies with respect to the circuit observed in Florida East Coast Railway versus West Palm Beach. The focus of ICTA was on removing direct state regulation of railroads. Now ICTA does provide remedies with respect to the regulation of rail competition and railroad rates, but it provides no remedy for general Indiana corporate governance law or for allegations of shareholder oppression. It's simply not a remedy that CP can obtain at the STB, and therefore the plain language of 105.01b does not apply. I'd like to make two final points quickly. First, on the 11.321 ICTA argument. Section 11.321 exempts only laws that are necessary to carry out a transaction. So if the state law would be an impediment to the transaction, the exemption applies. Here we know that the STB did not view the breach claim as an impediment. The majority shareholders specifically asked the STB not to address the breach claim, and the STB just did just that. It specifically declined to reach the issue and said it was it belonged in state court or federal court. Thank you, Your Honor. Thank you. Mr. Teger. Thank you, Your Honor. With the court's permission, I'd like to briefly summarize our key points and then turn to addressing some of the points Mr. Davis made. This case is the classic wolf and sheep's clothing. CP cares about one thing and one thing only, undoing the master trackage rights agreement and replacing it with the so-called IHB management recommendation. But knowing that it can't directly challenge the terms of the master trackage rights agreement, CP dresses up its argument as being all about alleged breaches of the various defendants' fiduciary duties. The problem is that the relief it seeks would directly interfere with the master trackage rights agreement and therefore is preempted under both Section 11321 and 10501. Now as we pointed out in our brief, Section 11321 is the simpler basis on which to affirm the district court. In fact, it is almost mathematical. The statute says that a carrier is exempt from any law as necessary to carry out an approved or exempted transaction. The master trackage rights agreement is an exempted transaction and CP's breach of fiduciary duty claim seeks to undo that exempted transaction. Therefore, the claim is preempted. Now turning briefly to Section 10501, that provision independently preempts CP's claims because it provides that the STB has exclusive jurisdiction over rail transportation and that the remedies provided under ICTA preempt any state law remedies. The DC Circuit's decision in Fayess and the Third Circuit's decision in G&T are on all fours with this case. The courts held in those cases that because the STB has exclusive jurisdiction over shipping rates, the plaintiffs could not bring state law challenges that would have the effect of superseding those jurisdiction over the terms of trackage rights agreements. State law claims that would have the effect of interfering with such agreements, like CP's fiduciary duty claims, are preempted. Now to turn to some of the arguments that Mr. Davis raised, I think it's important to note that what they're trying to do is transform some allegations of wrongdoing, which, by the way, are not accurate, to use them to bootstrap this argument that the whole agreement should be brought down. But they're not seeking a declaration that these specific breaches they've alleged, for example, failing to disclose the appraisals or falsifying the minutes of a board meeting, they're not seeking the declaration that those things are bad. They're not seeking an injunction not to falsify board meeting minutes or to require videotaping of the minutes. Instead, they're trying to bootstrap those allegations to take down the entire master trackage rights agreement, and that's what EXIT does not permit. Mr. Taker, this is Judge Zainib. If you're correct about the preemption, does Canadian Pacific have any remedy for the alleged misconduct, which at this stage we have to accept the allegations as true? In other words, can they bring a breach of fiduciary claims before the STB? No. We agree that the place to bring claims is court, and they could have a remedy for things that are not intertwined with the agreement. You know, if they really want to complain about the board minutes, if they really want to complain about the appraisals, that can be addressed in court because the remedy would not interfere with the master trackage rights agreement. The remedy would be specific to those allegations and would not be required to take down or it would not be necessary to take down the agreement because there is no allegation that those kinds of alleged breaches resulted in an invalid contract being formed. And the only thing that is permissible under ICTA for a state court to do is to make a decision that there is an absence of contract formation. For example, an absence of consideration or, to use the hypothetical in CP's brief, if there was a forgery or if the person who signed the agreement lacked authority. Those are things that state law can address, and that's why the STB does defer to states on issues of contract formation. But when the claim addresses or is predicated on the unfairness of the terms of an agreement, that's what's off limits because it interferes with the exclusive jurisdiction of the STB to decide on the terms of trackage rights agreements. So does it have any place to turn to seek a remedy for the conduct as they've alleged it? Well, what they are complaining about is you should not have rejected, you meaning the landlords, the three railroad defendants, you should not have rejected our board-recommended terms. And that's a breach of your fiduciary duty, which is clearly wrong under Indiana law, by the way. The landlords have a right to pursue their own economic interests, but as you say, we take for now the complaint as it's alleged. And the allegations are broader than that in the complaint. I think you have to concede that. They have alleged misconduct and coercion in what happened before the board. So taking those as true, do they have a place to litigate those claims? Not unless it goes to two bases for revoking an exemption. The two bases are if the notice of exemption was false or misleading. So if there was, this is not their allegation, but if they had alleged that the board recommendation was in fact a contract, and so you have supplied the STB with the wrong contract, and that makes your notice false and misleading, then it can be revoked on that basis. Similarly, they can seek revocation if it is anti-competitive. So for example, if they had alleged, which again, they don't, but if they had alleged that the rent in the agreement was so high as to put the future operations of IHB at risk, and that made it anti-competitive, they could have a proceeding before the STB to adjudicate that. But just because they don't like the terms that the landlord struck with the IHB board, that is not something that they are going to be able to get the STB to adjudicate. Now, but the fact that they may not have a specific remedy for what's irking them does not mean it's not preempted. The case law is clear that you don't need to have a remedy for ICTA, which is exceptionally broad, to preempt a claim. That's clear from the D.C. Circuit's decision in Fayess, from the Third Circuit's decision in GMT. It expressly articulates in the case CSX Transportation v. Georgia Public Services Commission, and it is a necessary implication in the block fracking cases and the railroad noise cases. These are all cases where people were making bargaining arguments they didn't like, and cloaking them in state law claims, whether they're nuisance, whether they're unfair competition, whatever the basis is. And the courts are saying, that's preempted, but nor did they have a right to get the STB to fix it. In fact, in Fayess and GMT, they were dealing with rates that Congress said even the STB can't hamper with. So the argument that something isn't preempted if they can't have an equivalent remedy for what they would have in court is not valid. Now, I just want to briefly touch on the history of the litigation before the STB. And when you do that, if you could please address what should we make of the language in the STB's opinion on the stay of the exemption, that if the district court voids the agreement, CP may file a petition to reject or revoke the notices at that time, suggesting that the district court have the authority to litigate and void the agreement. Sure. Let me start with that. The parties did not brief the STB about the substance of the fiduciary breach allegations. The STB didn't purport to review them and say, you know what, we think that these allegations are within the jurisdiction of the court to decide and to act upon. It merely said, and remember that we said to them that the court could address any claims that do not implicate the STB's exclusive or primary jurisdiction. So we were careful to preserve our ability to argue preemption when we got to federal court. So the board wasn't purporting to say, and the issue was never briefed, there was never even a mention of the word preemption, even though CP raises it to preemption itself on multiple occasions and was obviously aware that we were going to raise that defense in federal court. They never said to the STB, please decide this in advance so that we can then have a free pass in federal court. And as I alluded to before, there are circumstances. It was not a null set as far as the STB was concerned. There are circumstances in which you could raise a fiduciary duty claim or some other state law claim that would go to the formation of the agreement and whether or not the agreement was an invalid contract under Indiana law. But CP never argued anywhere that the contract was sort of void at initio because it failed to meet the formality for contract formation under Indiana law. And nor could it. It was a voluntarily negotiated agreement with the general manager of IHB. There was no suggestion even by CP that the general manager was misled. And so it would never meet the, it would never fail the requirements for a valid contract. And so I got off the path here, but the bottom line was the STB did not, even though it would have had authority to consider preemption if the parties had asked it to, it did not affirmatively rule that there's no preemption here merely by virtue of saying that if the district court were to void the master trackage rights agreement, then you can come back to us. That is the procedure. If there was some basis for voiding it, that is how it would work. But it never purported to be a decision on the merits of preemption. I guess I'll touch briefly on the waiver question that Judge St. Eve asked. And I guess my, there's three different waiver arguments that we believe were waived. And I will only refer the court to the County of McHenry case, which is cited in the Allen case, which we used as just an illustrative site for what is a very common point, as you know. But I thought the McHenry case was actually pretty illuminating, because in that case, the court refused to excuse a waiver by the county in responding to a motion to dismiss. So it's kind of similar procedurally to our case. And the reason the court gave was that the county was represented by able counsel who should have exercised care in responding to the motion to dismiss. Well, that's, you know, precisely the situation here. They had very skilled lawyers, both district court lawyers and lawyers with railroad expertise. So there was no reason they could not have joint issue on the 11321 issue. And certainly, you know, this point, which I was actually a little surprised that Mr. Davis started with, is about, you know, not giving him a chance to do discovery. They never asked the district court for that opportunity. They asked for an up or down ruling on preemption, and that's what they got. It seems to me that's a classic example of something that you would not want to – a waiver you would not want to excuse, given the resources that the district court had devoted to the issue, to say now that, oh, you're in error because you should have given the appellant the chance to take discovery, even though they didn't ask for it. So I think that's a classic instance of waiver. I think unless the court has further questions, I don't have any other points to make. All right. Hearing none, thank you very much. Mr. Davis, you have five minutes. Thank you, Your Honor. I'd like to respond briefly to the points that were made. First, on the 11-321 issue, the 11-321 exemption does not apply here because fiduciary duty laws are not an impediment to the STB's approval of the transaction. The STB did not exempt the parties from Indiana law when it allowed the exemption proceeding to move forward. And we know that, again, because the STB said exactly that. It said the Indiana law claim must be resolved in court. And we can distinguish this court's precedent under Hall in its interpretation of 11-321. On their, successor liability was a term of the agreement that was approved by the STB. So the STB reviewed and passed judgment on successor liability. The plaintiff then brought a claim for successor liability after approval. And so there, clearly, there was an exemption of successor liability. Here, the corporate governance and fiduciary duty issues were not terms of the agreement. And, again, the STB said as much. Counsel relied on Thompson and Pittsburgh Terminal. If you review those cases, each involved a direct challenge to the reasonableness or fairness of rates in the trackage rights agreement at issue. Again, we have allegations, as Your Honor acknowledged, that are broader than that. And that leads me to my third point with respect to remedies. Counsel suggests that our claim is a wolf in sheep's clothing and that it's all about the TRA. Well, there are allegations and remedies, again, that are broader than that. For example, I'll just hit on this again. The request for O&M expenses. That does not require an evaluation of terms of the trackage rights agreement. And it's squarely within a district court's equitable powers to award those types of economic recovery and other remedies as an equity court. Counsel appeared to acknowledge in his presentation that contract formation issues would not be preempted under ICTA. And I think that's really our point. When you review the STB proceeding and the regulatory framework in which the STB is evaluating the trackage rights agreement, and I'm looking now at 49 CFR 1180.2 subpart D, the board has found that its prior review and approval of these transactions is not necessary to carry out rail transportation policy. And so the STB simply does not pass judgment on the validity of a trackage rights agreement that's before it. It assumes the agreement is valid and it allows the exemption to move forward with a 30-day notice, rubber stamp, unless there are objections. The last point I will make is an alternative basis for resolving the preemption issue that is before the court. The court could ultimately determine that the Rule 12 missile was premature. By reviewing the two categories of victim preemption that this court has already observed in UP versus CTA, for categorical or per se preemption, which requires no factual analysis to apply, the regulation at issue must directly seek to regulate rail operations. Here we have a general tort law, fiduciary duty law, has nothing to do with rail transportation, competition, or race. It's a general statute. It should be applied under a fact analysis in the implied preemption framework. With that, Your Honor, I would request that you reverse the judgment of the district court and remand this case for discovery. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.